UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL L LUSK,<br><br>        Plaintiff,<br><br>    v.<br><br>SENIOR SERVICES,<br><br>        Defendant. | CASE NO. C12-733-MJP<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Senior Services' motion for summary judgment. (Dkt. No. 21.) Having reviewed the motion, Plaintiff's response (Dkt. No. 26), Defendant's reply (Dkt. No. 27), and all related papers, the Court GRANTS the motion.

**Background**

Plaintiff, Michael Lusk is an African American man and former employee of Defendant, Senior Services. (Dkt. No. 23 at 3.) Senior is a non-profit organization in Seattle that serves the needs of seniors and their families throughout King County. (Id.) Plaintiff worked for Senior from 2002-2010. (Id.) In 2010, Senior promoted Lusk to Lead Outreach Specialist in the Community & Information Assistance Program, a subset of the Caregiver and Outreach Support

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 1

Services Programs. He worked from the Southeast Center office and was supervised by Gregory Townsend, who is also African American. Although Lusk worked for Senior for more than 7 years, the facts relevant to his claims occurred in 2010 and 2011.

1. Director Position

The Southeast Seattle Senior Center, where Lusk worked, looked to hire a new director in mid-2010. (Id. at 2.) The Southeast Center has a board of directors, separate from Senior, who makes hiring decisions. Senior, though, was responsible for posting the position, screening applications for minimal qualifications, and selecting the initial interview pool. (Id.) In July 2010, Senior posted an opening for Southeast Center director. (Id.) The minimum qualifications for the position included: four years supervisory and/or administrative experience involving policy and program development; budget and financial management experience; and a record of results in programming, fundraising, and personnel. (Id. at 16.) The parties do not dispute Plaintiff did not meet all of these minimum qualifications.

The position opened in mid-July and closed August 18, 2010. (Dkt. Nos. 23 at 17; 24 at 2.) Senior received nearly 60 applications. (Dkt. No. 23 at 3.) Near the closing date, the Southeast Center Board decided to post-pone the hiring process, pending strategic decision-making about the long-term relationship with Senior. The Southeast Center announced to staff the postponement in an email on August 19, 2010. (Dkt. No. 26-3 at 30.) During a staff meeting also on August 19 where the postponement was discussed, Plaintiff alleges Southeast Center Board President, Josie Smith, explained the Board intended to hire an African American woman for the director position. (Dkt. No. 26-2 at 22.)

In September 2010, the Southeast Center decided to hire an interim director. Senior reviewed initial applicants and selected the first pool of interviewees from the original applicants. (Dkt. No. 23 at 3.) A white man, white woman, and African American woman made

1   it to the final round of interviews.  (Id.)  Ultimately, the Southeast Center hired Linda Greene, an

2   African American woman as the director.  (Id. at 13-15.)

3         Lusk never applied for the Southeast Center director position.  (Dkt. No. 23 at 25-27.)

4   He alleges Karen Beisner, Senior's Director of Human Resources, told him the position would be

5   re-opened, after August, and promised he could submit his application then.  (Dkt. No. 26-2 at

6   21.)  He also says he continued to work on his application as he waited for the position to re-

7   open.  But, the record is undisputed that Lusk lacked the minimum qualifications for the position.

8   (Dkt. No. 23 at 2-3.)  And, lacking those qualifications, he would not have been considered for

9   the position.  (Id.)

10         Shortly after Greene's hire, Plaintiff says he was asked introduce her to the Southeast Center.

11   (Dkt. No. 26-2 at 26.)  Plaintiff claims Senior also asked for his public endorsement of Greene.

12   (Id.)  Lusk attributes this request to his also being African-American.  (Id.)  He agreed to

13   introduce Greene, but refused any endorsement.  (Id.)

14       2.  Move to another Location

15         On October 18, 2010, Plaintiff was reassigned to the downtown Seattle office.  (Dkt. No. 22-3

16   at 7.)  Plaintiff alleges this was retaliation for refusing Smith's request to endorse Greene.  (Id.)

17   On the first morning Lusk reported to the downtown office, he met with Townsend, Beisner, and

18   Denise Klein, Senior's CEO, to discuss the placement.  At the meeting, Lusk expressed his belief

19   the reassignment was due to his refusal to endorse Greene.  (Dkt. Nos. 23 at 31; 22-1 at 153.)

20   Klein immediately apologized and reversed her decision.  She also gave him the rest of the day

21   off with pay.  (Id.)  The following day, Lusk resumed work at the Southeast Center.  (Id.)

22       3.  Layoffs

23         In November 2010, Senior laid off five employees, including Lusk.  (Dkt. No. 23 at 4.)  Of

24   these employees, three were Caucasian women, two were African American women, and one

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 3

(Plaintiff) was an African American man. (Id.) Senior blamed funding shortages for this decision. (Id.) A letter sent to Lusk announcing the decision stated:

> Due to the program running a significant deficit this year, Caregiver Outreach & Support is not able to sustain your position for the remainder of 2010. I regret to inform you that your employment with Senior Services is being terminated effective November 19, 2010…It is our expectation that we will be able to support your position beginning January 1, 2011, and if this is the case, you will be offered your position back.

(Dkt. No. 25 at 11.) November 18, 2010, was Lusk's last day at Senior. (Dkt. No. 23 at 5.) On that date, he returned all of his company property and ceased access to company documents and files. (Id.) He also emailed the staff with the title "Goodbye." (Dkt. No. 23 at 33.) The email explained Senior "expects that the Program will be able to support my position beginning January 1, 2011, and if this is the case, I will be offered my position back." (Id.) Lusk received his final paycheck on December 6, 2010. (Dkt. No. 23 at 5.) His medical and dental benefits ended on November 30, 2010. (Id.) Plaintiff applied for unemployment in November 2010, and looked for other work. (Id.)

   4.  Report to City of Seattle

Before Lusk's last day with Senior, he uncovered possible evidence of misappropriation of funds. (Dkt. No. 23 at 37-38.) On November 21, 2010, Lusk contracted the City of Seattle Aging & Disability Services ("ADS") contract monitor and disclosed his suspicions. (Dkt. No. 26-2 at 7-9.) He asked his identity be kept confidential. (Id.) In response to the report of possible misappropriation of funds, ADS conducted a review of Senior Services in December 2010. (Dkt. No. 22-4 at 6.) Senior did not learn who made the initial report to ADS until Lusk filed this lawsuit. (Dkt. Nos. 25 at 4, 22-2, 22-4, 21 at 17.)

In December 2010, Senior's CFO, Timothy Bridges, along with Klein and Townsend, decided to permanently eliminate Plaintiff's position. (Dkt. Nos. 25 at 4; 26-4 at 46.) Plaintiff

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 4

was the highest paid Outreach Specialist and Senior believed cutting his position would realize the most savings. (Dkt. No. 25 at 4.) Of the five employees laid off in November, all but Plaintiff were rehired. (Id.) On January 5, 2011, Townsend sent Plaintiff a letter stating Senior decided to eliminate his position. (Id. at 16.) Lusk was never rehired.

   5. Relationship with Townsend

Many of Lusk's claims revolve around the relationship with his supervisor, Townsend. Lusk considered the relationship good until the summer of 2010. (Dkt. No. 26 at 2) Although the record is not clear for the reason the relationship broke down, Lusk identifies several instances where he thinks Townsend exhibited biased behavior. (Dkt. No. 26-2 at 29-30.) For example, Lusk claims Townsend "joked" with another employee, Diedra Damon, about being of lighter skin color. He testified at his deposition:

> A. And Greg made a comment about her complexion, and she said that he was lighter. And he was.
> Q. That's what she responded to him.
> A. Yes.

(Dkt. No. 22-1 at 107-08.) Lusk merely heard these conversations, did not participate, and understood they were "directed toward her, so it wasn't directed toward me." (Id. at 111.)

At some point, Lusk came to believe Townsend wanted to be the "highest ranking African-American male in the organization." (Dkt. No. 22-1 at 215.) Other than Lusk's own subjective belief, the record lacks any corroborating evidence regarding Townsend's intentions.

   6. Procedural Posture

Plaintiff filed a complaint with the Equal Employment Opportunity Commission on October 21, 2011. (Dkt. No. 23 at 60.) He alleged violations of Title VII of the Civil Rights Act of 1964 for discrimination based on race, color, gender, and retaliation. (Id.)

He filed this suit in April 2012. (Dkt. No. 1.) In October 2012, Senior successfully moved to dismiss four of Lusk's claims. (Dkt. No. 16.) Senior now moves to dismiss the remaining claims of wrongful termination in violation of public policy, sex, race, and color discrimination, retaliation, and breach of promises of specific treatment in specific situations. (Dkt. No. 21.)

**Analysis**

A.  Motion to Strike

As an initial matter, this Court must decide what materials to consider. Senior moves to strike Lusk's opposition papers as untimely. (Dkt. No. 27 at 1.) Under this Court's Local Rule 7(d)(3) opposition papers to summary judgment motions are due the Monday before the noting date. Although Lusk did not file his opposition papers until the Tuesday before the noting date, the apparent result of a computer error by Plaintiff's counsel, the Court nonetheless considers them because Senior fails to show any prejudice. The motion to strike is DENIED.

B.  Motion for Summary Judgment

On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The moving party must initially show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party must then show a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). The court defers to neither party in resolving purely legal questions. See Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999).

      a.   Wrongful Termination in Violation of Public Policy

Lusk argues Senior's failure to rehire him constituted wrongful termination in violation of public policy. (Dkt. No. 26 at 16-17.) Because, as a matter of law, failure to rehire cannot be the basis of a wrongful termination claim, which requires the termination of current employment, Lusk's claim fails.

To assert a prima facie case for wrongful termination, Lusk must also show he was discharged for whistle blowing. Roberts v. Dudley, 140 Wn.2d 58, 76 (Wash. 2000)("wrongful termination only applies in a situation where an employee has been discharged.") Additionally, a plaintiff must show: (1) clear public policy ("clarity"); (2) discouraging conduct would jeopardize the public policy ("jeopardy"); (3) public-policy related conduct caused the discharge ("causation"); and 4) defendant does not have an overriding justification for the discharge ("absence of justification"). Gardner v. Loomis Armored, Inc., 128 Wn.2d 931, 941 (Wash. 1996).

Plaintiff's claim is precluded by the Washington State Supreme Court's decision in Warnek v. ABB Combustion Eng'g Servs., Inc., 137 Wn.2d 450 (Wash. 1999), which holds an employer's failure to rehire a former employee cannot, as a matter of law, be the basis for a wrongful termination claim. In Warnek, the Court found:

> The statute by its plain language . . . expressly provides for complaints by employees who have been discharged or otherwise discriminated against during the course of their employment. This evidences a legislative intent not to provide protection under the statute to former employees who have not been rehired . . . To reach a contrary conclusion would go beyond the statute's clear and unambiguous language resulting in this Court inappropriately "read[ing] into a statute matters which are not there.

Id. at 457-58.

In an attempt to skirt this unequivocal case law, Plaintiff argues the termination of his employment in November was only temporary. The summary judgment record belies this

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 7

characterization. Senior's November 5, 2010, letter notifying Plaintiff of his layoff, stated, "I regret to inform you that your employment with Senior Services is being terminated effective November 19, 2010." (Dkt. No. 25 at 11.) Plaintiff received a "final paycheck" on December 6, 2010, his medical benefits through Senior were discontinued on November 30, 2010, and he returned all of his company property. (Id. at 14-15.) Plaintiff began receiving unemployment benefits in December 2010 and looked for other work in November and December 2010. Together, these facts show Plaintiff was permanently terminated from his employment in November 2010. Senior's later decision to eliminate the position and not to rehire Lusk cannot serve as the factual predicate for a wrongful termination claim. Therefore, the Court GRANTS summary judgment on the wrongful termination in violation of public policy claim.

          b.  Discrimination

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits discrimination in federal employment based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–16. Likewise, the Washington Law Against Discrimination ("WLAD") protects employees from discrimination on the basis of "race, creed, color, [or] national origin," and retaliation by an employer for engaging in statutorily protected activity. RCW § 49.60.180(2), .210. Lusk alleges four different kinds of discrimination:(1) disparate treatment based on sex; (2) disparate treatment based on race; (3) disparate treatment based on color; and (4) retaliation or reprisal for a protected activity. The court examines each of these claims in turn, finding summary judgment to be appropriate for each one.

To establish a prima facie case of disparate treatment in the terms and conditions of employment, a plaintiff must show that: (1) the plaintiff belongs to a class of persons protected by Title VII; (2) the plaintiff performed his or her job satisfactorily, was qualified, and met the legitimate expectations of the employer; (3) the plaintiff suffered an adverse employment action;

and (4) the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006).

The court analyzes each claim under the burden-shifting approach used for summary judgment motions in Title VII employment discrimination cases. The employee has the initial burden to establish a prima facie case of discrimination. Cornwell, 439 F.3d at 1028. This creates a presumption of discrimination. Id. The burden then shifts to the employer, who must rebut the presumption by producing admissible evidence showing a "legitimate, nondiscriminatory reason" for the challenged action. Id. If the defendant does this, the presumption of discrimination disappears and the burden shifts back to the employee to meet the ordinary standard of proof required for summary judgment. Id. In other words, summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action for a discriminatory reason. Id. Washington courts take substantially the same approach to WLAD claims. Hill v. BCTI Income Fund–I, 144 Wn.2d 172 (Wash. 2001).

      i. Sex Discrimination

Lusk's sex discrimination claim is premised on the notion he was denied the opportunity to apply for the Southeast Center Director position.

Lusk has not established a prima facie case of disparate treatment discrimination based on sex discrimination because he offers no evidence to show he was minimally qualified for the director position. The uncontroverted record shows Lusk did not meet the minimum qualifications because he did not have the required 4 years of management experience and had received sub-par evaluations of supervisory abilities in the short time he had a management position . (Dkt. No. 23 at 2-3, 21-23.) Based on Blow v. City of San Antonio, 236 F.3d 293, 298

(5th Cir. 2001), Lusk attempts to deflect from his lack of qualifications, arguing: "the issue is not whether Lusk was qualified, but rather whether he was denied equal opportunity to compete for the open position." (Dkt. No. 26 at 17.) Blow addressed an employer's failure to publicize job openings within a department, thus preventing minority employees from applying. Id. In contrast, the Southeast Center position was publicized and was open for more than 30 days. Blow does change the legal requirements for a prima facie case or fix the shortcomings in the record before the Court.

Additionally, Lusk has not met his initial burden with respect to elements (3) and (4), that is, Lusk has not shown Senior treated him differently than any similarly situated employees not belonging to the same protected class. Senior offers evidence that the position had been open for approximately a month, during which Lusk could have applied. Lusk did not. Moreover, while Townsend and Beisner may not have been willing to recommend him for the position, nothing in the record can attribute Lusk's failure to apply to anything beside his own decisions. At least 40 people applied for the position and both men and women were selected for the initial and final round of interviews. Moreover, although Lusk repeatedly states the position closed early or women applicants were allowed to continue to apply, the record does not support any of these assertions. Lusk fails to meet his burden with respect to this claim and summary judgment is appropriate. See Cornwell, 439 F.3d at 1028.

        ii. Race Discrimination

Lusk also asserts a claim for race discrimination based on Senior's decision to terminate his employment and not rehire him. (Dkt. No/ 26 at 18.)

Lusk has not established a prima facie case of disparate treatment discrimination based on race. Again, he has not met his initial burden with respect to elements (3) and (4); that is, he has not shown that Senior treated him differently than any similarly situated employees not

belonging to the same protected class. Lusk offers evidence Senior terminated his employment, but this evidence does not demonstrate that any similarly-situated employees not in the protected class were treated differently. Of the five employees affected by the layoffs and another who had hours cut, three were African American and three were white. (Dkt. No. 23 at 4.) Of the five rehired, two were African American. (Id.) This evidence shows, instead, other employees were treated the same as Lusk.

Even if Lusk could make a prima facie case for race discrimination, the claim would still fail because Senior has come forward with more than enough evidence to establish a "legitimate non discriminatory reason" for the termination of Lusk's employment and decision not to rehire him. Cornwell, 439 F.3d at 1028. Specifically, Senior presents a substantial amount of evidence showing Lusk was laid-off due to the organization's financial shortcomings. (see Dkt. No. 27 at 8-11.) This showing shifts the burden back to Lusk to show defendant's proffered motive, budget shortfalls, is pretext. Vasquez v. County of Los Angeles, 349 F.3d 634, 640 n. 5 (9th Cir. 2003). Lusk offers two pieces of evidence to show there was no financial shortfall at Senior; neither creates a genuine issue of material fact. First, he offers a pay-stub to show his position was actually funded from a budget not in deficit. (Dkt. No. 26 at 20.) But, the document does not indicate its funding source or show he received income from a position not subject to the 2010 recession. (Dkt. Nos. 26 at 20, Dkt, No. 29.) Second, Lusk points to a 2011 review by City of Seattle, which he argues "found it [the Community Information & Assistance Program] was fully funded from its inception on January 1, 2010 through December 31, 2011." (Dkt. No. 26 at 20.) This document does not create a genuine factual dispute because the assessment by the City addressed whether Senior was complying with various contract terms and did not constitute an evaluation of the financial viability of the organization. Moreover, the un-rebutted declaration of

1   Senior Chief Financial Officer, Timothy Bridges, explains Senior's use of discretionary funds to
2   prop up the Community Information & Assistance Program, as well as the substantial shortfalls
3   in other budgets required funding flexibility.
4       Nor does Lusk produce direct or circumstantial evidence demonstrating that racial
5   animus or discriminatory reason was, more likely than not, what motivated Senior. Surrell v.
6   Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Instead, Lusk offers his own
7   subjective belief that Townsend, also an African-American male, sought to push him out of the
8   organization and remain the "highest level African American." This subjective belief, without
9   more, is inadequate to defeat summary judgment. Rivera v. National R.R. Passenger Corp., 331
10   F.3d 1074, 1078 (9th Cir. 2003); Nelson v. Pima Community College, 83 F.3d 1075, 1082–83
11   (9th Cir. 1996). On this record, a reasonable jury could not conclude the termination of Lusk's
12   employment was pretext for racial (or color or retaliatory) animus.
13       The Court finds that there are no genuine issues of material fact and GRANTS summary
14   judgment to Defendant on this claim.
15           iii.   Color Discrimination
16       Plaintiff also fails to make a prima facie case for disparate treatment based on color
17   discrimination.[1] Plaintiff claims he is a dark skinned African American and his termination was
18   part of Townsend's efforts to lighten the skin town of the Senior workforce. Lusk fails to meet
19   his initial burden of showing similarly people of a different color were treated more favorably.
20   Specifically, Greene, who was hired as the Southeast Center Director, is the same color he is and

---

22   [1] Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African American individual is
23   discriminated against in favor of a light-colored African American individual. Bryant v. Bell Atlantic Maryland, Inc., 288 F.3d 124, 133 n. 5 (4th Cir. 2002)
24

three of the four people also laid-off in November 2010 are of lighter skin color. (Dkt. No. 22-1 at 108.) Lusk attempts to create genuine factual dispute by pointing to the comments by Townsend to another employee about the color of her skin as proof of Townsend's bias. A reasonable jury, however, could not find these conversations evidence of color or racial bias; Lusk concedes these statements were jokes and not directed at him. Further, stray remarks, like these, cannot not be the factual basis for a discrimination claim. Merrick v. Farmers Ins. Group, 892 F.2d 1434, 1438 (9th Cir. 1990). Nor do the two photographs offered by Lusk create any genuine factual dispute as to whether the changes in the work force resulted from Townsend's color animus because they simply fail to establish motive. This Court holds, on the record before it, no reasonable jury could conclude Senior's decision to lay him off and terminate his position was the result of color discrimination and not financial need, as Senior reasons. Summary judgment is granted to Senior on this claim.

      iv. Retaliation

  To establish a prima facie case of retaliation, a plaintiff must show that (1) he is engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. Vasquez, 349 F.3d at 646. If a plaintiff is able to establish a prima facie case, the burden shifts to the employer to provide a legitimate, non-retaliatory explanation for the employment action. Bergene v. Salt River Agr. Imp. and Power Dist., 272 F.3d 1136, 1141 (9th Cir. 2001). If this is done, the burden shifts back to the employee to show that the defendant's explanation is merely a pretext for unlawful retaliation. Id.

  Here, the Court assumes for the sake of argument that Lusk can establish a prima facie case of retaliation for Senior's decision to terminate his employment. But, even assuming this,

his retaliation claim does not survive summary judgment because Senior provided a legitimate, non-discriminatory reason for its employment decision; the organization lacked funds and needed to make cuts. As discussed in the preceding section, Senior produced a substantial amount of evidence it terminated his employment because he was highly paid and the organization, suffered financially. Lusk fails to show this explanation was a pretext for unlawful retaliation.

As to the other actions Lusk complains were retaliatory—the alleged shunning by Townsend, requesting Lusk introduce and endorse Greene at the Southeast Center, and move for a half-day to the downtown office—none meet the threshold for an adverse employment action. An adverse employment action must be "materially adverse," meaning it must be a significant, not trivial harm. Burlington Northern Railroad, 548 U.S. 53, 68 (2006). Lusk fails to show these temporary and isolated instances meet the threshold for material adversity. Therefore, the Court GRANTS summary judgment in favor of Senior on the retaliation claim.

        c. Breach of Promises for Specific Treatment

To prove a breach of promises of specific treatment claim, Plaintiff must show: (1) statements that amounted to promises of specific treatment in specific situations; (2) the employee justifiably relied on any of these promises; and (3) any of the promises were breached. Bulman v. Safeway, Inc., 144 Wn. 2d 335, 340-41 (2001).

Lusk identifies several alleged promises: (1) Townsend's promised to recommend Plaintiff for the Director position; (2) Beisner promised to assist Plaintiff with his complaints; (3) Beisner promised him the Director position would be reopened and he could apply; (4) Plaintiff was told no one from I&A would be laid off; and (5) Plaintiff would be rehired in January, as stated in a November 5, 2010 letter. Only the last of these alleged promises was in writing, a prerequisite for a breach of promises claim. Drobny v. Boeing Co., 80 Wn. App. 97, 107 (Wash.

ORDER GRANTING MOTION FOR SUMMARY
JUDGMENT- 14

Ct. App. 1995) ("oral representations by an employee's supervisor are insufficient to establish an enforceable promise"). Plaintiff's vague suggestion that evidence of the oral promises might eventually be found in the written record, falls short of the standard for avoiding summary judgment: Lusk must show a genuine issue of fact for trial. Matsushita Elect. Indus., 475 U.S. at 586.

As to the November 2010 letter that notified him of his layoff and the possibility of rehire in January 2011, Plaintiff fails to establish a prima facie claim because the letter simply does not contain a written promise. The letter merely stated:

> Due to the program running a significant deficit this year, Caregiver Outreach & Support is not able to sustain your position for the remainder of 2010. I regret to inform you that your employment with Senior Services is being terminated effective November 19, 2010. It is our expectation that we will be able to support your position beginning January 1, 2011, and if this is the case, you will be offered your position back.

(Dkt. No. 25 at 11.) The Court holds a reasonable jury could not conclude this letter constitutes a promise. While the letter states Senior aimed to rehire Plaintiff, it did not promise to do so.

Nor does the record show Lusk relied on a promise of rehire. Duncan v. Alaska USA Fed. Credit Union, Inc., 148 Wn. App. 52, 60 (Wash. Ct. App. 2008) (a plaintiff must show a reliable justification, an employer "creates an atmosphere of job security . . . and an employee is induced thereby to remain on the job and not actively seek other employment.") On his last day, Lusk sent an email to his co-workers titled "Goodbye," stating he "expects that the Program will be able to support my position beginning January 1, 2011, and if this is the case, I will be offered my position back." (Dkt. No. 23 at 33.) Before learning in January that his position was eliminated, Plaintiff actively sought other employment (Dkt. No. 22-1 at 68-70 and 170-74.) This record does not create any genuine question as to Lusk's reliance in a promise of

1  employment in January 2011. Instead, it shows he understood his employment had ended and
2  took steps to find another position.
3        Because a reasonable jury could not find Senior breached its promise of specific
4  treatment, the Court GRANTS summary judgment on this claim.

5  **Conclusion**

6        The Court GRANTS the summary judgment motion because Lusk fails to assert an
7  actionable claim for wrongful termination, does not make a prima facie case for sex, race, or
8  color discrimination, or overcome Senior's legitimate, non-retaliatory reason for terminating his
9  employment. Last, Plaintiff fails to offer evidence Senior made written promises it broke and
10 that he reasonably relied on these written promises. Because no genuine factual dispute exists,
11 the Court GRANTS summary judgment to Senior. Finally, because this order terminates the
12 case, the Court does not consider Plaintiff's untimely motion to amend his complaint (Dkt. No.
13 32) or Defendant's motions in limine (Dkt. No. 39).
14       The clerk is ordered to provide copies of this order to all counsel.
15       Dated this <u>12th</u> day of June, 2013.

                    Marsha J. Pechman
                    Chief United States District Judge